In re **VYLENE ENTERPRISES, INC., Debtor.**

**VYLENE ENTERPRISES, INC., Plaintiff–Appellee,**

v.

**NAUGLES, INC., Defendant–Appellant.**

**No. CV 90–4090 SVW.**

**Bankruptcy No. LA 84–14659 SB.**

**Adv. No. LA 85–4983 SB.**

United States District Court, C.D. California.

Oct. 29, 1990.

William T. Rintala, Diane B. Sherman, Suzanne Criley, Rintala, Smoot, Jaenicke & Brunswick, Michael A. Morris, Stutman, Treister & Glatt, Los Angeles, Cal., for defendant and appellant Kentucky Fried Chicken of So. Calif., Inc. formerly known as Naugles, Inc.

Howard Mark Becker, Becker & Soosman, Westlake Village, Cal., Philip K. Fife, Universal City, Cal., for debtor and plaintiff Vylene Enterprises, Inc.

## ORDER VACATING JUDGMENT OF THE BANKRUPTCY COURT

WILSON, District Judge.

### INTRODUCTION

This case is before this court on appeal from the judgment of the bankruptcy court pursuant to 28 U.S.C. sec. 158(a). Appellant Kentucky Fried Chicken of Southern California, Inc. formerly known as Naugles, Inc. ("Naugles") has moved in this court for an order vacating the judgment of the bankruptcy court on two grounds. First, appellants claim that the bankruptcy court exceeded its jurisdiction in entering judgment in this proceeding because it is not a core proceeding under 28 U.S.C. sec. 157(b). Second, appellants assert that even if the bankruptcy court had jurisdiction to enter judgment, its purported final judgment is defective because it disposes of less than all the claims in the adversary proceeding and fails to comply with Rule 54(b) of the Federal Rules of Civil Procedure made applicable to the bankruptcy court by Bankruptcy Rule 7054.

The debtor, Vylene Enterprises, Inc. ("Vylene"), was a franchisee of defendant-appellant Naugles, operating a fast-food restaurant pursuant to a ten year franchise agreement entered into in December, 1975. On July 17, 1984, Vylene filed a Chapter 11 Bankruptcy petition. On December 30, 1985, the expiration date of the franchise agreement, Vylene filed an adversary proceeding against Naugles in the bankruptcy court. Vylene's First Amended Complaint, which was filed on April 15, 1986, asserted nineteen claims for relief based on Naugles' alleged refusal to negotiate for an extension of the franchise agreement and other alleged misconduct concerning the performance of the agreement.

Naugles' Answer to the First Amended Complaint alleged that the proceeding was a non-core proceeding and stated that it did not consent to the jurisdiction of the bankruptcy court. Naugles also filed counterclaims for trademark violations, unfair competition, misappropriation of trade secrets, and for possession of the real property held by Vylene under sublease from Naugles. Naugles then moved for a preliminary injunction to prevent Vylene from continuing to use Naugles' federally registered trademarks. While that motion was under submission, Naugles moved for relief from the automatic stay so that it could pursue repossession of the franchise.[1] In ruling on the merits of Naugles'

---

1. Under 11 U.S.C. sec. 362(a), no judicial proceedings may be brought against the debtor and all others previously commenced are stayed by the filing of a bankruptcy petition with the

motions for relief from the stay and for preliminary injunction, the bankruptcy judge held that the Naugles' counterclaims and motion for preliminary injunction concerned the continued use of property by the debtor, and thus, the case was a core proceeding within the literal language of 28 U.S.C. sec. 157(b)(2)(M). *In re Vylene Enterprises, Inc.*, 63 B.R. 900, 905 (Bankr.C.D.Cal.1986), *rev'd*, No. CV 86–7281 JSL (C.D.Cal. June 25, 1987), *appeal dismissed sub nom., Naugles Inc. v. Vylene Enterprises, Inc.*, 891 F.2d 295 (9th Cir.1989) (unpublished disposition).

The bankruptcy judge rejected Vylene's argument that the preliminary injunction motion violated the automatic stay, finding that the stay does not apply to motions for injunctive relief brought in the court in which the bankruptcy case is pending. *Id.* at 907. However, the bankruptcy judge denied the motion for preliminary injunction on its merits, permitting Vylene to continue operating the Naugles' franchise and using the Naugles' trademarks on a provisional basis pending a final determination on the merits of the adversary proceeding. *Id.* at 912. The bankruptcy court conditioned its denial of the preliminary injunction on Vylene's payment of interim franchise and rental fees of $2,000 per month. *Id.* Essentially, the bankruptcy court found that the failure of the parties to negotiate in good faith for a renewal of the franchise agreement resulted in the failure of a condition precedent to the expiration of the agreement. *Id.* at 909. Thus, the agreement not having expired, Naugles would not likely succeed on the merits of its counterclaims for trademark infringement and repossession of the franchise.

Further, the bankruptcy judge's provisional order permitting Vylene to continue operating the franchise left Naugles' with no forum other than the bankruptcy court in which it could pursue repossession of the franchise.[2]

Naugles appealed the bankruptcy court's denial of its motions for preliminary injunction and for relief from the stay to the district court. The district court reversed, holding that the bankruptcy judge had misinterpreted the right of first refusal clause in the franchise agreement and that there was no right to renew. *In re Vylene Enterprises, Inc.*, CV 86–7281 JSL, Order Reversing And Remanding To Bankruptcy Court, at 3 (C.D.Cal. June 25, 1987), *appeal dismissed sub nom., Naugles Inc. v. Vylene Enterprises, Inc.*, 891 F.2d 295 (9th Cir.1989) (unpublished disposition). Thus, the occurrence of good faith negotiations for renewal was not a condition precedent to the expiration of the franchise agreement, and to the extent the bankruptcy court denied relief on the basis that the franchise agreement had not expired, the bankruptcy court had erred. *Id.* Essentially, the district court found that while Vylene could enforce an obligation upon Naugles' to comply with the terms of the agreement and to act in good faith with regard to the franchise agreement, it did not have a right to renew the franchise if Naugles declined to do so. *Id.* (noting that Naugles' remedy for breach of any such obligation would be an action for money damages).

The district court's order was appealed by Vylene to the Ninth Circuit, which subsequently dismissed the appeal as moot and vacated the Bankruptcy Court Order deny-

---

exception of certain enumerated proceedings listed in the statute.

**2.** The bankruptcy court had held that 11 U.S.C. section 362(b)(10), which provides that there is no automatic stay "under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain repossession of such property," was not applicable since the franchise agreement had not expired. *In re Vylene Enterprises, Inc.*, 63

B.R. at 906. Therefore, Naugles' claim for repossession of the real property was not within the exception to the automatic stay. *Id.* Further, since Vylene's continued use of the franchise was pursuant to a bankruptcy court order, Naugles' claim for repossession could proceed only upon relief from the bankruptcy court's provisional order or relief from the stay to pursue repossession in a separate action. The latter alternative would be extremely unlikely in light of the bankruptcy court's provisional order permitting Vylene's continued operation of the franchise.

ing preliminary injunction of September 10, 1986, and the subsequent District Court Order reversing and remanding of June 25, 1987. *In re Vylene Enterprises, Inc.*, 891 F.2d 297 (9th Cir.1989) (text available on Westlaw), reported at *Naugles Inc. v. Vylene Enterprises, Inc.*, 891 F.2d 295 (9th Cir.1989) (table of unpublished dispositions). The appeal had become moot as the bankruptcy court had granted Naugles' renewed motion for relief from the automatic stay and allowed Naugles to take possession of the premises due to Vylene's failure to pay franchise fees and rent pursuant to the court's provisional order. *Id.; See In re Vylene Enterprises, Inc.*, 105 B.R. 42, 45 (Bankr.C.D.Cal.1989) (Memorandum of Opinion Re Liability of Naugles, Inc.).

Meanwhile, as neither of the appellate decisions had addressed the bankruptcy court's finding that the adversary proceeding was a core proceeding,[3] the bankruptcy court held a trial in three phases over a period of nearly three years concerning Vylene's claims for breach of the franchise agreement and for breach of the implied covenant of good faith and fair dealing. The court found that Naugles breached the franchise agreement and the covenant of good faith and fair dealing by, *inter alia*, opening a competing franchise within the immediate vicinity of the Vylene franchise and by refusing to negotiate in good faith for a renewal. *Id.* at 49. Subsequently, the bankruptcy judge ruled that Vylene had suffered damages in the amount of $2,219,468 and awarded attorneys' fees and costs of $550,000 to Vylene. *In re Vylene Enterprises, Inc.*, Bk. No. LA 84–14659 SB, Adv. No. LA 85–4983 SB, Ruling On Damages (Bankr.C.D.Cal. July 5, 1990). On July 12, 1990, the bankruptcy court entered the judgment from which Naugles appeals.

## DISCUSSION

Appellant Naugles' main contention is that the bankruptcy judge erred in characterizing the adversary proceeding filed by Vylene as a "core" proceeding under 28 U.S.C. sec. 157(b). That section provides, in subdivision (b)(1), that bankruptcy courts, as established by the Bankruptcy Amendments And Federal Judgeship Act of 1984 ("1984 Act"), Pub.L. 98–353, 98 Stat. 340, "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, ... and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. sec. 157(b)(1). Section 157(b)(2) provides a non-exclusive list of proceedings Congress deemed to be core proceedings. Section 157 further provides that where a proceeding is not a core proceeding, but is related to a case under title 11, the bankruptcy judge may hear the case as an adjunct of the district court and submit proposed findings of fact and conclusions of law to the district court, with any final order or judgment to be entered by the district court after a *de novo* review of any matters to which a party has properly objected. 28 U.S.C. sec. 157(c)(1). Additionally, however, under section 157(c)(2), the parties may consent to the bankruptcy court's jurisdiction and authority to enter judgments in such "related" proceedings. *In re Daniels–Head & Associates*, 819 F.2d 914, 918–19 (9th Cir.1987) (*"Daniels–Head"*); 28 U.S.C. sec. 157(c)(2).

■ The issue before this court on Naugles' motion is whether the adversary proceeding filed by Vylene in the bankruptcy court was a "core" proceeding subject to entry of judgment by the bankruptcy judge or rather a related proceeding in which the bankruptcy court could only act as an adjunct. As a question of jurisdiction, the bankruptcy judge's determination is subject to *de novo* review in this court. *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986) (*"Castlerock"*). The distinction between "core" and "related" is significant in that it affects the standard of review to be applied by the district court.

---

**3.** The Ninth Circuit did not reach the merits of any question in the case. The district court did not address the bankruptcy court's finding that the proceeding was "core," it only reviewed the bankruptcy court's denial of Naugles' motions for relief from the stay and preliminary injunction.

If it was a "core" proceeding, then the bankruptcy judge had the authority to enter judgment and this court would be sitting as an appellate court reviewing the judgment below for clear errors of fact and reviewing *de novo* the bankruptcy judge's conclusions of law. *Daniels–Head,* 819 F.2d at 918. On the other hand, if the adversary proceeding was "related" rather than "core," then the bankruptcy judge's findings of fact and conclusions of law would be subject to *de novo* review in the District Court, unless the parties consented to the bankruptcy court's authority to enter judgment. *See id.;* 28 U.S.C. sec 157(c)(1)–(2).

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (*"Marathon"*), the Court held that the broad jurisdictional grant to the bankruptcy courts to hear and decide state-created claims related to federal bankruptcy proceedings violated the U.S. Constitution by delegating Article III judicial business to non-Article III bankruptcy judges. *Id.* at 87, 102 S.Ct. at 2880 (plurality opinion); *id.* at 91, 102 S.Ct. at 2882 (concurrence). The jurisdiction of the bankruptcy courts with regard to matters arising under the federal bankruptcy laws was not affected by the *Marathon* decision. *See In re Thomas,* 765 F.2d 926, 929 (9th Cir.1985). Between the *Marathon* decision and the passage of the 1984 Act, the bankruptcy and district courts acted pursuant to an "Emergency Rule." *Id.* at 928 & n. 2. This rule, similar to the dichotomy set up by section 157 of title 28, distinguished between "core" and "related" proceedings. *Id.* at 928–29. In upholding the "Emergency Rule," the *Thomas* court noted that *"Marathon* only invalidated the jurisdiction of the bankruptcy court to make final determinations in matters that could have been in a district court or state court." *Id.* at 929. Further, in analyzing the nature of the underlying adversary proceeding, the court noted that it had been properly characterized as "related" because "in the absence of a petition

in bankruptcy, [it] could have been brought in ... a state court." *Id.* at 928 n. 3.

While *Thomas* is not dispositive, as it was not interpreting the current statute, it is instructive as to the meaning to be placed on the *Marathon* decision. Its interpretation was essentially reaffirmed by the Ninth Circuit in *Castlerock,* which held "that state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. sec. 157(b)(2)(B)–(N) are related proceedings under sec. 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections 157(b)(2)(A) and (O)." 781 F.2d at 162; *see In re Cinematronics, Inc.,* 916 F.2d 1444 (9th Cir. 1990) (reaffirming *Castlerock* analysis). The *Castlerock* court specifically noted that "[t]o hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional." *Castlerock,* 781 F.2d at 162; *accord In re American Manufacturing Technologies, Inc.,* 60 B.R. 645, 650 (Bankr.S.D.Cal.1986) (under *Marathon* and its progeny, garden variety contract dispute cannot be considered a core proceeding under the catch-all provisions of 28 U.S.C. sec. 157(b)); *In re Illinois–California Express, Inc.,* 50 B.R. 232, 237–38 (Bankr.D.Colo.1985) (*"Marathon* provided a clear mandate that the jurisdiction of the bankruptcy courts to determine state law causes of action should be regarded with much circumspection lest constitutional principles be offended.") As one bankruptcy court has noted, "[t]o be a core proceeding, an action must have as its foundation the creation, recognition, or adjudication of rights which would not exist independent of a bankruptcy environment although of necessity there may be a peripheral state law involvement." *Acolyte Electric Corp. v. City of New York,* 69 B.R. 155, 173 (Bankr.E.D.N.Y.1986).

Subsequently, the Ninth Circuit has upheld bankruptcy court jurisdiction over one of the enumerated "core" proceedings,[4] though based originally in state law, as

---

**4.** An action by the trustee against a transferee to set aside a fraudulent conveyance by the debtor pursuant to 28 U.S.C. sec. 157(b)(2)(H).

consistent with *Marathon*. *In re Mankin*, 823 F.2d 1296, 1307–09 (9th Cir.1987), *cert. denied sub nom. Munn v. Duck*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). The court, after noting the significance of the distinction between "core" and "related" proceedings, found that the action to set aside a fraudulent conveyance was a "core" proceeding over which the bankruptcy court could constitutionally preside and enter judgment. *Id.* at 1305, 1307. The court, however, specifically noted that the right at issue "directly relate[d] to the restructuring of debtor-creditor relations and [was] not merely an action to bring property into the estate." *Id.* at 1307 (an action merely to bring property into the estate would not be a core proceeding); [5] *see also Acolyte Electric Corp.*, 69 B.R. at 171–72 (an action to collect accounts receivable styled as an action for turnover of property pursuant to 28 U.S.C. sec. 157(b)(2)(E) is a core proceeding only where there is no bona fide dispute as to liability or amount); *accord In re United Security & Communications, Inc.*, 93 B.R. 945, 958–59 (Bankr.S.D.Ohio 1988) (same).

◼ Given this state of the law and the significant distinctions between "core" and "related" proceedings, this court must determine whether the adversary proceeding filed by Vylene in the bankruptcy court was one over which the bankruptcy judge could preside and properly enter judgment. The adversary proceeding contained nineteen state law claims for relief premised on Naugles' refusal to negotiate in good faith for renewal and other misconduct concerning the franchise agreement. There is no

indication that, in the absence of a bankruptcy petition, these claims could not have been brought in state court. Further, these claims appear to rest solely on questions of state law regarding the terms of the franchise agreement. The only apparent connection to the bankruptcy proceeding is that the action was brought by the debtor. Rather than presenting any issue directly related to restructuring the debtor-creditor relationship, this action appears to be merely an action to bring money into the estate. *Cf. In re Mankin*, 823 F.2d at 1307.

◼ The bankruptcy judge held that this was a "core" proceeding based on Naugles' counterclaims for trademark infringement and repossession of the real property. Even if that ruling was correct as to the counterclaims, it is the court's belief that the filing of the counterclaims in the only forum capable of providing relief from the automatic stay is not sufficient to convert the whole adversary proceeding into a "core" proceeding.[6] *Cf. Castlerock*, 781 F.2d at 162 (finding the defensive filing of a proof of claim insufficient to transform previously filed claims by the debtor into counterclaims under sec. 157(b)(2)(C)). Thus, the court finds that the adversary proceeding brought by Vylene was not a "core" proceeding in which the bankruptcy judge had the authority to enter judgment.

◼ Further, whatever merit the bankruptcy judge's determination that the adversary proceeding was "core" may have had at the time it was made, following his subsequent grant of relief to Naugles to

---

**5.** The action to avoid a fraudulent conveyance under 28 U.S.C. sec. 157(b)(2)(H) is premised on the notion that the estate remains in constructive possession of the fraudulently conveyed property as the conveyance does not effectively transfer title. Therefore, such an action does relate directly to restructuring of debtor-creditor relationship where it is brought by the trustee "to gather property into the estate *on the behalf of creditors* of the debtor to facilitate the restructuring of creditor-debtor relations". *In re Mankin*, 823 F.2d at 1307. The *Mankin* court distinguished *Marathon*, noting that "[t]hat suit sought to gather assets into the estate; it did not do so on behalf of creditors nor did it seek to determine or adjust any of the debtor's relations

with its creditors." *Id.* The court also noted that the right to set aside a fraudulent conveyance is inextricably linked to the bankruptcy as the basis for the action is that the conveyor is or is about to become insolvent. *Id.* at 1307 n. 4. On the other hand, the adversary action at issue here for breach of the franchise agreement, like the contract action in *Marathon*, "could have been brought whether or not the plaintiff was bankrupt." *Id.*

**6.** The issue before this court is whether the bankruptcy judge had the authority to enter judgment on Vylene's adversarial state created claims against Naugles.

repossess the franchise,[7] the only remaining issues to be resolved were the purely state law claims for damages for breach of the franchise agreement. Even if the earlier ruling that the whole adversary proceeding was "core" was correct, the court's authority to enter judgment ended when the claims giving rise to the "core" nature of the proceeding were removed from the case.[8] As the bankruptcy petition had been converted from one under Chapter 11 to one under Chapter 7 prior to the conclusion of the trial in the bankruptcy court, and the only relief available at the end of the trial was money damages, the bankruptcy court no longer had, if it ever had, the jurisdictional authority to enter judgment on the basis that the action concerned the continued use of property. *Cf.* 28 U.S.C. sec. 157(b)(2)(M).[9] Therefore, the court concludes that the adversary proceeding filed by Vylene was not a "core" proceeding within the definition of 28 U.S.C. sec. 157(b) at the time the bankruptcy court entered judgment.

■ Having found that the adversary proceeding was not a "core" proceeding, the court must determine whether the bankruptcy court had the power to hear the case at all as a "related" proceeding. As the resolution of the case will affect the size of the estate, the court finds that the adversary proceeding is a proceeding "related" to a case under title 11 within the definition of 28 U.S.C. sec. 157(c)(1).

■ The court must next address whether the parties consented to the jurisdiction and authority of the bankruptcy judge, pursuant to 28 U.S.C. sec. 157(c)(2), to hear and enter judgment on the case. While consent need not have been explicit,[10] the fact that Naugles continued to litigate defensively in the bankruptcy court is insufficient to constitute consent. *Castlerock*, 781 F.2d at 162–63; *cf. In re Daniels–Head & Associates*, 819 F.2d at 918–19 (appellant-debtor's filing of its state law claims in bankruptcy court against third party constituted consent to bankruptcy jurisdiction to enter judgment where it failed to object after *Marathon* decision). While the *Daniels–Head* court was willing to imply consent from the appellant-debtor's conduct, in that case it was the appellant-debtor who had originally filed the claims in the bankruptcy court and who had failed to object to that court's continuing jurisdiction after *Marathon*. 819 F.2d at 919. In this case, however, it is the party who was sued by the debtor in the bankruptcy court that is objecting to that tribunal's jurisdiction. Therefore, the bankruptcy court having ruled against it on the question of "core" versus "related," the fact that Naugles continued to litigate in the bankruptcy court does not indicate a willingness to have that court enter judgment upon the state law claims filed against it. Rather, once the bankruptcy court had denied Naugles' motion for preliminary injunction and had allowed Vylene to continue operating the franchise, there was no other forum in which Naugles could seek relief from the bankruptcy court's provisional order. Since Naugles alleged in its Answer to the First Amended Complaint that it did not consent to jurisdiction and continued to argue that the adversary proceeding was a "related" rather than "core" proceeding, the court finds that Naugles did not consent to the authority of the bankruptcy judge to enter judgment pursuant to 28 U.S.C. sec. 157(c)(2). *See also* Bankruptcy Rule 7008(a), Advisory Committee Notes, 1987 Amendment ("Only

---

**7.** The court granted Naugles relief and allowed it to repossess the franchise because Vylene had ceased making its monthly payments pursuant to the bankruptcy court's provisional order. *See In re Vylene Enterprises, Inc.*, 105 B.R. at 45.

**8.** The bankruptcy court was not ousted of jurisdiction, it was ousted of the authority to enter judgment.

**9.** Once the court had granted Naugles relief from the stay and had allowed it to retake possession of the franchise, the bankruptcy court could not have issued an "order[ ] approving the use or lease of property." 28 U.S.C. sec. 157(b)(2)(M).

**10.** The Advisory Committee Notes to the 1987 Amendment to Bankruptcy Rule 7008(a), effective August 1, 1987, provide that only express consent is effective to authorize the entry of judgment by the bankruptcy judge in a non-core matter.

express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding.")[11]

The court having decided to grant appellant's motion to vacate the judgment of the bankruptcy judge as beyond that court's authority, the court need not dispose of appellant's second contention that the judgment as entered is defective. However, the court notes that the bankruptcy court's judgment does appear to be defective on its face in failing to make an express determination that there is no just reason for delay and an express direction for the entry of judgment or, alternatively, that it resolves all outstanding issues in the case and, thus, is a final judgment as to all claims and parties. Therefore, the court holds, in the alternative, that the bankruptcy court's judgment is defective under Rule 54(b) of the Federal Rules of Civil Procedure made applicable to the bankruptcy court by Bankruptcy Rule 7054.

### CONCLUSION

The court, having found that the adversary proceeding filed in the bankruptcy court by Vylene is a "related" rather than "core" proceeding, hereby vacates the judgment of the bankruptcy court. Further, as the judgment has been vacated, the court dismisses the appeal, and remands the case to the bankruptcy court to submit findings of fact and conclusions of law to the district court pursuant to 28 U.S.C. sec. 157(c)(1).

IT IS SO ORDERED.

---

11. This rule which became effective after the court's decision in *Daniels–Head* would appear to preclude a finding of implied consent. However, since the rule became effective after the adversary proceeding commenced and the jurisdictional allegations were required of the parties, it is not clear whether it applies to this case.

Nevertheless, as the court has determined that there was no consent, either express or implied, by Naugles to the authority of the bankruptcy judge to enter judgment, it need not decide whether the amended Bankruptcy Rule 7008(a) is controlling.